Rector v. Gutru.

---

EDMOND C. RECTOR ET AL., APPELLEES, V. GEORGE H. GUTRU ET AL., APPELLANTS.

FILED DECEMBER 31, 1923.    No. 22603.

Brokers:  CONTRACT OF BROKERS:  LIABILITY OF PRINCIPAL.  A real estate broker, who for an agreed commission procures a contract for the exchange of his principal's land for land of another, and then, by a further verbal agreement with his principal, undertakes to sell the land so acquired by the latter, and to receive out of such sale the amount of his commission, does not thereby acquire an interest in such land; nor is he thereby authorized to enter into a written contract which wil' bind his principal to convey the land.  If the broker then enters into a further written contract to purchase the land from his principal, and then in his own name enters into another contract to sell the land to a third party, his principal is not liable in damages for a breach of the broker's contract to convey.

APPEAL from the district court for Antelope county: WILLIAM V. ALLEN, JUDGE.  *Reversed.*

*J. F. Boyd* and *H. Halderson,* for appellants.

*Jackson & Rice* and *J. A. Donohoe, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN and GOOD, JJ., SHEPHERD, District Judge.

GOOD, J.

This is an action to recover damages for breach of a contract to convey real estate, in which Edmond C. Rector and Henry H. Drayton are plaintiffs, and George H. Gutru, Frank Hough, and Austin C. King, Jr., are defendants. Judgment went in favor of defendant King and for plaintiffs as against Gutru and Hough. The latter two have appealed.

On the 31st day of December, 1918, King entered into a written contract, whereby he agreed to convey to Rector an 80-acre tract of land in Antelope county, Nebraska, for a consideration of $5,300, of which $500 was then paid in cash. It was for a breach of this contract that the action was brought. Plaintiffs allege that in entering into said contract Rector acted for himself and his coplaintiff Drayton, and that each was to furnish half of the consideration. They also allege that in entering into said contract King acted for himself and for Gutru and Hough. Plaintiffs allege, in substance, that at the time of the execution of said contract King, Gutru and Hough were the joint owners of a contingent interest in the aforesaid real estate, such interest being based upon a written contract between the said Gutru and Hough and one W. T. Brookhouser, and that the said King, Gutru and Hough, prior to the execution of the contract by King, entered into a verbal agreement, by the terms of which it was understood and agreed that King should obtain a purchaser for the said real estate on the terms set forth in the contract, and that upon King obtaining such purchaser Gutru and Hough, with King, would convey such real estate to said purchaser; that Gutru, Hough and King were joint owners of the aforesaid real estate and were jointly liable for failure to comply with the terms of said contract.

Each of the defendants answered separately. King, for his answer, admits entering into the contract, and alleges that he was acting for and on behalf of himself and the defendants Gutru and Hough; that on the 30th of December, 1918, he had received a contract for the sale of said land

from Gutru and Hough, and, in entering into the contract of sale with Rector, he was acting for himself and for Gutru and Hough, and that they failed to furnish him (King) with an abstract of title and warranty deed as agreed; and alleges further that his failure to perform the contract was due to the failure of Gutru and Hough to fulfil their contract with him. The answers of Gutru and Hough are the same in substance. Each admits that at one time he had an interest in a contract with Brookhouser, but avers that King at no time had any interest in the same, and that at no time did King have any authority from the answering defendant to make any contract relative to the land described in the petition, and denies all the other allegations in the petition.

The record discloses without substantial dispute that Gutru and Hough, who were residents of Newman Grove, Nebraska, were copartners engaged in selling western Kansas lands; that they employed King, a resident of Orchard, Nebraska, as agent to solicit and find purchasers for the lands they were handling, and orally agreed to pay him a commission of $2.50 an acre for land sold to purchasers procured by King, such commissions to be paid when each deal was closed and the consideration paid. Pursuant to this arrangement, King procured one Brookhouser to enter into a contract with Gutru and Hough for exchange of lands, whereby Gutru and Hough were to convey to Brookhouser 320 acres of land in Greeley county, Kansas, and as consideration therefor, Brookhouser was to pay $400 in cash and convey to Gutru and Hough 80 acres of land in Antelope county, Nebraska. This exchange contract was made in November, 1918, and provided for exchange of deeds of the parties thereto on or before December 1, 1918.

From this on, there is a conflict in the evidence. King, who is apparently quite friendly to the plaintiffs, was called as a witness for them, and testifies, in substance, that in December, 1918, there was an oral agreement between him and Gutru and Hough, whereby he was not to receive his commission on the Brookhouser deal until he (King) should

sell the land that·Brookhouser had agreed to convey, and that he should sell this land for $5,300, of which he should receive $800 and Gutru and Hough $4,500; that he found a purchaser for this land in the person of Rector, and notified Gutru by telephone that he had a purchaser for the land; that thereupon Gutru sent Hough to him; that he did not disclose to them who the purchaser was, but that, pursuant to the understanding and arrangement that he was to sell the land upon the terms agreed upon, Gutru and Hough executed a contract, whereby they agreed to convey to King the same land for a consideration of $4,500, and that King at that time paid to Hough the sum of $250. Gutru denies that any such oral agreement was made; denies having the telephone conversation which King testified to, and says that he knew nothing of the contract between King and Rector for many months thereafter. Hough testifies that on or about December 30, 1918, he stopped in Orchard to see King in regard to closing up the Brookhouser deal, and that at that time an agreement·was made whereby Gutru and Hough were to convey the land to King for $4,500, but Hough says that he did not then know that King had agreed to sell the land to Rector or anyone else, but inferred that he was buying the land to sell to others.

Brookhouser failed to carry out his contract and convey the land to Gutru and Hough, and, in an action between them over the controversy, the contract between Brookhouser and Gutru and Hough was cancelled. Gutru and Hough never acquired title to the Antelope county land, and so could not convey it to King, and King could not convey to Rector.

Numerous assignments of error are alleged, but, in the view we take of the case, it will be necessary to consider but one of such assignments, viz., that the verdict is not sustained by the evidence.

Plaintiffs argue that King, Gutru and Hough were engaged in a joint enterprise; that King, together with Gutru and Hough, had a joint interest in the land at the time the contract was made between King and Rector;·that, having

such joint interest in the land, King had authority to enter into the contract with Rector without written authority from Gutru and Hough, and, in any event, that the contract signed by Gutru and Hough, whereby they undertook to convey the land to King, was a sufficient compliance with the statute of frauds.

We do not think the facts disclosed by the record will sustain plaintiffs' position. No facts were proved which would establish a partnership or joint venture between King and Gutru and Hough. If the deal with Brookhouser had been finally consummated, King would have been entitled to a commission of $800 for procuring the sale of the Kansas land. The validity of that contract was litigated in court, and it was determined that Brookhouser was not liable thereon. The contract between Brookhouser and Gutru and Hough was never consummated. It follows that King was never entitled to a commission for making the sale of the land to Brookhouser.

Again, taking King's testimony, that there was an oral arrangement that he should sell the Brookhouser tract and should receive his commission therefrom for the two deals, which commission should be $800, this was not sufficient to give King any interest in the land; nor was it sufficient to authorize him to make a contract for the sale of the land which would bind Gutru and Hough. Under the facts proved, King at no time had any interest in the land, except under his contract of purchase. The most that can be claimed is that King was acting as the agent of Gutru and Hough for the sale of the Antelope county land which Brookhouser had agreed to convey. It is elementary that an agent, who has no interest in the property, cannot bind his principal by a contract to convey the principal's land unless such authority is in writing. It is not claimed that there was any such written authority. But, counsel argue, Gutru and Hough having signed the contract, wherein they agreed to convey the land to King, this was sufficient authority for King to enter into a contract to convey the land to Rector. It is admitted by King, as a witness for the

plaintiffs, that he did not disclose that Rector was a prospective purchaser of the land. The contract which was executed by Gutru and Hough to King was for a consideration of $4,500. The contract from King to Rector was for a consideration of $5,300. The contract from Gutru and Hough to King did not constitute and was not an authority for King to execute another contract to Rector for a different consideration, which would be binding on Gutru and Hough. It follows that Gutru and Hough were never bound by, and never became liable upon, the contract between King and Rector. They could not, therefore, be liable in damages for the breach of the contract.

Plaintiffs further argue that, even if the defendants Gutru and Hough were not bound by the contract entered into by King and Rector, still, as between King and Rector, the contract is fully binding, and Gutru and Hough, by having failed to answer the cross-petition filed against them by their codefendant King, confessed the allegations thereof and are now bound by the judgment in this case. The fallacy of this argument lies in the fact that King did not file any cross-petition. After setting forth the facts, above stated, in his answer, the prayer of his answer was in a dual form, as follows: "Defendant prays that said petition be dismissed as to him, that, if judgment be recovered against the defendant King, the defendants Gutru and Hough be required to respond to the defendant King for the payment thereof." There were no allegations in King's answer wherein he sought any relief against the defendants. The prayer is no part of the allegations of the answer. Nor was any question submitted to the jury as to any cross-action on the part of King against Gutru and Hough. The answer of King did not require any reply on the part of the defendants Gutru and Hough. In addition to that, the plaintiffs, in their reply to the answer of King, deny every allegation of such answer. Technicalities may be resorted to to prevent a failure of justice, but should not be resorted to to sustain an injustice. The only one of the defendants who could have been liable to the plaintiffs in this case was King, and,

for some reason that is not apparent, the jury held that King was not liable.

The verdict is not sustained by the evidence, and the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.